Barkley v. His Creditors.

## WILLIAM BARKLEY v. HIS CREDITORS.

The commission allowed to the provisional syndics of the creditors of an insolvent estate, by the 11th section of the act of 20th February, 1817, of " one per cent on the appraised value of the goods and effects confided to their care," is to be calculated on the appraised value of the property as shown by the schedule of the insolvent.

A provisional syndic of an insolvent estate has no other duty to discharge than that of keeping the property surrendered as a deposit, performing such conservatory acts as may be necessary for the interest of the insolvent and his creditors, and demanding and receiving the rents and income of the property, and such debts as may become due during his administration, which expires on the nomination of definitive syndics.

Law charges are the costs incurred in court in the prosecution of a suit, to be paid by the party cast. Such costs, when taxed according to law, are privileged against the insolvent's estate, whether incurred previously to the insolvency, or in the *concurso*. C. C. 3162, 3163.

The costs of the proceedings, incurred in establishing a charge of fraud against an insolvent, are included among the law charges privileged against the estate.

APPEAL from the District Court of the First District, *Buchanan*, J.

*S. L. Johnson* and *L. Janin*, for the appellants.

*Blache*, for the provisional syndic.

*J. L. Lewis*, pro se.

*Benjamin*, for the opponents.

SIMON, J. On the filing of the *tableau* of distribution by the syndic of the insolvent estate of William Barkley, divers oppositions were made to its homologation by the following persons :

1st. By Joseph Le Carpentier, late provisional syndic of the said estate, claiming that the commission accruing to him as provisional syndic should have been calculated and charged at the rate of one per cent on the appraised value of the property surrendered by the insolvent, as per his schedule, to wit, on $27,000, for which the opponent had furnished the necessary

Barkley v. His Creditors.

bond and security, and not on $6,250, the proceeds of the sale of said property, and that consequently the same ought to be put down on the *tableau* as amounting to $270.

2d. By A. Dreux, clerk of the City Court, who, being a creditor of the insolvent for the sum of $90 37, for clerk's fees, claims to be put upon the *tableau* as a privileged creditor.

3d. By Charles Claiborne, marshall of the City Court, who complains that being a privileged creditor of the insolvent for the sum of $154 75, for costs due him before the failure by the insolvent, in divers suits instituted before the City Court of New Orleans, he has not been put upon the *tableau*, and he prays to be placed thereon as a privileged creditor for the said sum.

4th. By John L. Lewis, clerk of the court *a qua*, who opposes the homologation of the said *tableau*, because he has not been placed on the same as a privileged creditor for the amount of his costs due by the insolvent as per certificate filed ; and he prays to be placed thereon as a privileged creditor for the sum of $427 95.

These oppositions were sustained below ; the *tableau* of distribution was ordered to be amended accordingly ; and from this judgment, the syndic and L. B. Macarty, a mortgage creditor of the insolvent, have appealed.

I. The judge *a quo* did not err in allowing to the provisional syndic his commission of one per cent on the appraised value of the property surrendered as per schedule of the insolvent. By the 3d section of the act of 1817 (B. & C.'s Dig. p. 487, No. 3.) it is provided that the schedule of the debtor, to be annexed to his petition, shall contain a summary statement of his affairs, &c., and a statement of all his property, &c., together with a mention *of the approximate value of the property by him assigned.* By the 7th section of the same act, " in case the debtor who applies for its benefit, shall have no property to surrender to his creditors, or *if the appraised value of the property exhibited in his schedule* should not amount to more than one-third of his debts, &c., the judge shall not admit him to the benefit of this act, &c." By the 10th section, the judge is empowered to appoint one or two provisional syndics, and to require from them a bond, the amount of which shall be proportioned *to the value of the estate*

*delivered up to them.* By the 11th section, which points out the duties of the provisional syndics, it is provided that, *when render-ing their accounts,* they shall be entitled to demand, for their trouble and services, *one per cent on the approved value of the goods and effects confided to their care,* and five per cent on the rents and income which they shall have received during their administration. And by the 12th section, all the goods, titles and claims, which the insolvent debtor shall have declared in his schedule, or which might have been sequestered anterior to the appointment of provisional syndics, *shall be delivered up to them,* immediately after their appointment, and *shall remain in their hands,* subject to the same sequestration as before, &c.

From the terms of the several sections of the law of 1817, above quoted, it is manifest that the provisional syndic, whose term of appointment is to expire by the nomination of definitive syndics, and who is only to take charge of the estate of the insolvent debtor, and keep the same until the meeting of the creditors, has no other duty to perform but that of keeping the property surrendered as a deposit, performing all the conservatory acts which may be necessary for the interest of the insolvent debtor and of the mass of creditors, and demanding and receiving the rents and income of the said property, as also the claims which may become due during the time of his administration. He has nothing to do with the sale of the estate. He is a mere depositary, and he takes the property as he finds it upon the schedule of the insolvent, according to the approximate value therein mentioned, which value is to serve as the basis of the amount of the bond which he is bound to furnish. Thus, it is clear, that when the provisional syndic renders his account to the syndics appointed by the creditors, no change has taken place in the property which came under his administration, and that the same is by him delivered over to his successors under the schedule, and in the same state in which it was at the time of the surrender, except whatever increase may have taken place from the rents and income by him received, or from the collections which he may have made. When he delivers the estate to the definitive syndics, the property passes into the hands of the latter, with no other appraisement but that made

by the insolvent in his schedule, and it is then, says the law, *when rendering his account*, that he is entitled to demand for his trouble and services, *one per cent on the appraised value of the goods and effects confided to his care*, and five per cent on the rents and income by him collected. These expressions of the law necessarily refer to the appraised value of the property as shown by the schedule, according to which the estate was administered, and we are satisfied that they cannot mean any other.

II, III, IV. The question raised under these oppositions has been fully examined in the case of *Rousseau* v. *His Creditors* (17 La. 206), in which we held, in substance, that, under the Civil Code, law charges are defined to be costs incurred in court in the prosecution of a suit, to be paid by the party cast; and that the creditor is entitled to a privilege when the costs he claims are *taxed costs*, whether in a suit previously to, or in the *concurso* against the insolvent debtor's estate; and we have been unable to discover any reason to be dissatisfied with our former opinion.

With regard to the objection that the costs incurred by the proceedings had on the charge of fraud, which resulted in a verdict and judgment against the insolvent, are not a charge upon the estate, but must be borne by the defendant, who was condemned to pay them, and in his default by the two opposing creditors, we think otherwise. The charge of fraud, though made by one of the creditors, was made in a *concurso*, and was to enure to the benefit of the mass, if sustained; all the creditors were, therefore, interested in the proceeding, and it was the duty of the syndic, if made after his appointment, to sustain the charge, if he believed it to be well founded. 14 La. 458. 5 Rob. 105. This he did, and it is admitted that he joined in endeavoring to sustain the charge, by his counsel's taking a part in the argument. It is clear that the charge of fraud having been established for the benefit of the mass of creditors, and with a view of depriving the insolvent of the benefit of the act, the costs thereof, which are included among the law charges, and consequently privileged, must be paid out of the estate.

*Judgment affirmed.*