### No. 11,025.

JOHN CALDER & CO. AND D. R. CALDER vs. THEIR CREDITORS.

1. The general rule of our insolvent laws requires that property surrendered shall be held intact during the pendency of proceedings for the election of a definitive syndic; and provisional syndics, when appointed, are not generally authorized to sell property, but are required to hold all the assets and deliver them to the syndic.

Calder & Co. vs. Their Creditors.

2. But this general rule suffers exceptions in cases where, owing to the nature and situation of particular property, a sale is necessary to prevent its deterioration and preserve its value for the benefit of all concerned, in which cases the sale may be sustained as a conservatory act which the law expressly authorizes provisional syndics to perform.

3. It certainly requires a strong case to justify the sale of immovable property as a conservatory act; but in the case of a sugar plantation in course of cultivation where it is admitted that the insolvency is without means to run it, that the abandonment of its cultivation would operate a great deterioration of value, and that its prompt sale is necessary for the interests of all concerned, and particularly when the first mortgage creditor to the probable value of the plantation and the provisional syndics concur in the facts and in the opinion of the advisability of the sale, the judge is vested with a legal discretion to order the sale as a conservatory act, and this court approves its exercise.

A PPEAL from the Civil District Court, Parish of Orleans.
*King, J.*

*Henry L. Lazarus* and *Horace E. Upton* for Provisional Syndics, Appellants:

1. A debtor can arrest the executory process of his creditor whose act of mortgage contains the non-alienation clause by surrendering his property to his creditors, when the executory proceedings must be cumulated with the proceedings in insolvency. Wheeler vs. Stewart, 18 An. 673; 11 An. 482.

2. When a debtor cedes his goods to his creditors, and a stay of proceedings is granted, the cession operates the civil death of the debtor.
He can not, consequently, remain a party in a suit. The judge's order stays all proceedings against the debtor, whether they be carried on against his person, general estate, or any part of it.
His rights pass to other persons, and can not be affected by legal proceedings to which the new ones are not parties. Elmes vs. Estevan, 1 M. 193.

3. A cession of property and the order thereon, operates a stay of all proceedings, even the sale of property encumbered as security for a debt, which a court of competent jurisdiction, by a judgment rendered before the failure, had ordered to be sold. Syndic of Bermudez vs. I. Ibanez & Milne, 3 M. 39.
The decree ordering a stay of proceedings against the owner of the land ought to have stopped the judicial sale of that land, and that the sale made in contravention to it was illegal and void.
This is the language of the authority last cited. 3 M. 39.

4. Debts are not extinguished by the creditor's insolvency; they pass to his representatives. West vs. Creditors, 1 An. 365.
Property sequestered must, on defendant's cession, be delivered to his syndic to be sold in due course of law, plaintiffs' privilege being preserved on the proceeds. Duclerc vs. Crebassol, 19 L. 91.

5. The acceptance of the cession vests the property in the creditors, so as to be no longer liable to seizure or execution. 2 R. 187; 9 R. 219; 3 An. 387; 4 M. 562; 3 An. 490; 4 N. S. 625: 10 M. 178; 5 R. 101; 3 An. 582; 7 R. 61; 7 An. 40; 14 An. 439.

6. Before any proceedings can be taken looking to the sale of the property of the insolvent, and the application of the proceeds to his debts, it is necessary that a syndic should have been qualified, and an order of court for the sale obtained. As an incident of such proceedings a meeting of creditors must be called for the purpose of determining the terms and conditions of sale. Spears vs. His Creditors, 40 An. 650.

7. The provisional syndic has " nothing to do with the sale of the estate. He is a mere depository, and he takes the property as he finds it upon the schedule of the insolvent, according to the approximate value therein mentioned, which value is to serve as the basis of the amount of the bond which he is bound to furnish.

"Thus it is clear, that when the provisional syndic renders his account to the syndics appointed by the creditors, no change has taken place in the property which came under his administration, and that the same is by him delivered over to his successor under the schedule, and in the same state in which it was at the time of the surrender, except whatever increase may have taken place from the rents and income by him received, or from the collections he may have made." Barkley vs. His Creditors, 11 R. 30; Pitcher & Co. vs. Creditors; 40 An. 784

8. A surrender is made by the insolvent debtor to his creditors, and it is accepted by the judge for their benefit. In contemplation of law all proceedings looking to a disposition of the property surrendered and the application of its proceeds to the payment of creditors, whether privileged or ordinary, are to be postponed until they have chosen a definitive syndic, and he shall have qualified and furnished bond.

In the interest of an orderly administration of justice we deem it necessary to rigidly enforce these provisions of the insolvent law. Pitcher vs. His Creditors 49 An. 785; 1 R. 533; 8 L. 301; 35 An. 257.

*White, Parlange & Saunders* for Whitney Bank, Appellee, cited: Rev. Stat., Secs. 1792, 1793; 43 An. 124; Rev. Stat., Sec. 1816; 41 An. 445.

*Henry C. Miller* for the Canal Bank, Appellee:

The mortgage importing confession of judgment with the stipulation *de non alienando* secures to the creditor for the payment of his debt the right to seize and sell the mortgaged property, as if still in the possession of the mortgagor, irrespective of any alienation or change of possession. See Nathan vs. Lee, 2 N. S., p. 34; Nicolet vs. Macon, 13 La. 315; Guesnard vs. Soulie, 8 An. 58; Successson of Thompson, 42 An. 122; 1 Hennen's Digest, p. 653, No. 2.

Hence, no title created by the debtor can disturb this remedy of the creditor to proceed directly against the mortgagor for the seizure and sale of the property. Nor does the death of the mortgagor change the remedy of the creditor and compel him to seek payment with other creditors in probate court. Ibid.

It follows that the cession of property by the mortgagor, no more than his death, can affect the remedy of the creditor holding the mortgage of the character under consideration. Ibid., and Devron vs. His Creditors, 11 An. 482.

*Carroll & Carroll, Amici Curiæ.*

Calder & Co. vs. Their Creditors.

The opinion of the court was delivered by

FENNER, J.   The Whitney National Bank is a creditor of D. R. Calder for $20,000, secured by first mortgage on the Orange Grove plantation.   After fruitless efforts by the insolvent and the bank to effect a private sale of the plantation, the bank sued out executory process in the Civil District Court of this parish, under which the plantation was duly seized and advertised for sale to take place on March 19, 1892.

On the 15th of February, 1892, Calder made, in the proceeding now before us, a cession of his property under the State insolvent law. Provisional syndics were duly appointed and qualified.

Thereupon the bank intervened in the insolvent proceedings, and, representing the necessities and circumstances of the case as indicated in the agreed statement of facts, which we reproduce further on, they took a rule upon the provisional syndics to show cause why the court should not make its order allowing the sale of the plantation to proceed under the order of seizure and sale as advertised, under the condition that the proceeds should be paid over to the syndics, and held by them as funds of the insolvency subject to the same mortgages resting on the plantation, and to be distributed by them according to law.   The syndics appeared and showed cause against the rule on two grounds, viz.:

1. That, under the law, the court is without authority or power to grant the relief demanded.

2. That no legal order for the sale of the property referred to in said rule can be granted until a definitive syndic is elected herein, and the cession made by the insolvents accepted by their creditors.

The case was submitted to the court under the following statement of facts:

" 1. The Whitney National Bank of New Orleans held and owned, and still holds and owns, the note of D. R. Calder, one of the above named insolvents, for $20,000, dated March 30, 1889, payable one year from date, and payment extended to January 1, 1891.

" 2. The said above described note was secured by first mortgage on the Orange Grove plantation, in Lafourche parish, Louisiana, owned by said D. R. Calder, before H. N. Coulon, notary public in said parish of Lafourche, and duly recorded; said mortgage contains the *pact de non alienando.*

"3. On December 26, 1891, the said Whitney National Bank sued out executory process on above mentioned note and act of mortgage, in the suit entitled 'Whitney National Bank vs. D. R. Calder,' No. 34,586 of the docket of the Civil District Court for the parish of Orleans, in which said parish said D. R. Calder was resident and domiciled at the time.

"4. In said proceedings, after due notices and delays, the writ of seizure and sale issued and was placed in the hands of the sheriff of Lafourche parish for execution, and thereunder, after due notices and delays, the said sheriff seized, and then advertised for sale, according to law, the said Orange Grove plantation.

"5. After the issuance of said writ and the seizure of said plantation, as above recited, the said John Calder & Co. and the said D. R. Calder filed their petition making a cession of their property to their creditors, under the insolvent laws of Louisiana, in the proceedings hereinabove entitled.

"6. The insolvents surrendered as part of their assets seven sugar plantations under cultivation, one of which was the said Orange Grove plantation.

"7. The only funds surrendered by the insolvents, or since received by the provisional syndics, are $7000, part of the proceeds of the crop of 1891, made on said sugar plantations, or on some of them, and now applicable to the privileged or ordinary creditors of the insolvents.

"8. It will cost about $1500 a month to cultivate and keep up the Orange Grove plantation from now until July, 1892.

"9. If said Orange Grove plantation is not so cultivated and kept up, it will rapidly and largely deteriorate in value; the drainage will become obstructed with vegetation and earth; the labor will leave the place; the crop will be lost, and a heavy expenditure of money will be necessitated to restore the plantation to its present earning capacity and value, and in consequence of such deterioration the plantation will sell for much less than could be obtained for it now.

"10. The opinion of persons who own or deal with sugar plantations is that they will not sell as advantageously later in the season as they would now; that while the plantation might sell for a little more later on, it would not, in all probability, sell for as much more as would have been expended in cultivating and keeping it up. And

if, in consequence of an unfavorable season, too much rain or too little, a crevasse or visitation of worms, the crop did not look well, the plantation would probably sell for much less than it would bring now.

" 11. The syndics have not sufficient funds in the insolvency to cultivate and keep up all the plantations surrendered, even if they are permitted to use all the funds in the insolvency for that purpose. If they undertake to cultivate the places, they will be compelled to borrow money for that purpose; and if the plantations should not find a purchaser when offered for sale, then the syndics will be compelled to borrow largely in order to complete the crop and get back the sums so borrowed.

" 12. The said Orange Grove plantation was offered for sale nearly six weeks preceding the cession of property herein, and the highest price offered in that time did not equal the amount of the mortgage resting on said plantation.

" 13. The meeting of creditors for the election of a syndic will open in this case on March 21, 1892.

" 14. If the Whitney National Bank is permitted to sell under its writ, as demanded in its rule, it is willing to advance the funds necessary to run the plantation until the date of the sale; and the provisional syndics are of the opinion that if such sale can be legally allowed by the court, it will be greatly to the interest of all concerned.

" HORACE E. UPTON and H. L. LAZARUS,

" *Attorneys for Prov. Syndics.*

" WHITE, PARLANGE & SAUNDERS,

" *Attorneys for Whitney National Bank.*"

After hearing, judgment was rendered making the rule absolute and granting the order as prayed for, from which the provisional syndics prosecute the present appeal.

The case really presents no issue, except the issues of law raised on the pleadings, viz.: to-wit: (1) whether, in any case, the court has power to order the sale of property surrendered before the election of a definitive syndic, and (2) whether it had authority to make the particular order here granted.

If the court had the authority to order the sale, the statement of facts exhibits conclusively a proper case for its exercise. We deal with the substance, not the form of things. It is not of the slightest

consequence whether the order is applied for by the bank or by the provisional syndics. Both were before the court; both submitted the question to the court; both agreed upon the facts which rendered the sale necessary; and the syndics expressly told the court that they were " of the opinion that if such sale can be legally allowed by the court, it will be greatly to the interest of all concerned."

Their counsel now say in their brief: " The provisional syndics are not before the court urging that the sale of the mortgaged plantation was a conservatory act necessary for its preservation and safe keeping." We can give no heed to such a statement. They were before the court upon an agreed statement of facts, showing that the sale of property was a conservatory act necessary to preserve the property from great deterioration in value, and advising the court that, if it could be legally done, the sale should be ordered in the interest of all concerned.

We can not permit them, in this court, to impugn the judgment of the court below on any other question than the one submitted, of judicial authority *vel non.*

It is equally insubstantial to say that this sale was made in a proceeding conducted against the debtor, and under order granted in a proceeding different from the cession, and which had been stayed by the latter.

The sale was really made under and by authority of the order here complained of, issued by the court in the insolvent proceedings. The bank asserted no pretension of right to proceed with the sale under the original order. It acknowledged the paramount authority of the insolvent court, and applied for its order as the warrant under which the sale should be made and according to which the funds realized were to be held, controlled and distributed by that tribunal. The case differs, in no respect, from what it would have been had the court rendered an independent order of sale without reference to the pending foreclosure proceeding. It prejudiced no right and was a wise exercise of discretion in the interest of economy, to allow the sale to proceed under the pending advertisement, if it was legal to make the sale at all.

It was, moreover, a substantial compliance with the provisions of the law under which suits against the insolvent do not abate, but are only stayed by the cession, and which require further proceedings therein to be conducted before and under the authority of the

insolvent court. C. P., Art. 165, No. 3; Rev. St., Sec. 1816; State ex rel. Cohen vs. Judge, 41 An. 41.

These formal objections being thus eliminated, the sole question remaining is whether or not the law vests the insolvent court with authority, in any case, to order the sale of assets surrendered prior to the meeting of creditors and the choice of a definitive syndic.

It can not be denied that the general rule prescribed by our insolvent laws requires that the property surrendered shall be held intact during the pendency of the proceedings for the election of a syndic, and that provisional syndics, when appointed, exercise, ordinarily, only powers of administration and must hold and deliver to the definitive syndic, when elected, all the assets which have been received by them. Such are the provisions of the law enforced by uniform jurisprudence. Rev. Stat., Secs. 1793, 1794, 1812; Pitcher vs. Creditors, 40 An. 784; Spears vs. Creditors, Id. 650; Barkley vs. Creditors, 11 Rob. 30.

But the law-maker could not close his eyes to the fact that during the considerable delays that might intervene before the appointment of a definitive syndic, sometimes extending over many months, an inflexible adherence to this rule might impair and even utterly destroy the value of some of the surrendered assets. Hence he wisely invested provisional syndics with the power of " performing all the conservatory acts which may be necessary, as well for the interest of the insolvent debtor as for that of the mass of creditors." Rev. St. 1793.

It is, to our minds, self-evident that these powers embrace the power of sale when that is necessary for the conservation of the property or its value. Even in cases of attachment the law wisely provides that property attached, if " of a perishable nature, and subject to be lost or deteriorated during the pendency of the suit," may be sold *pendente lite*.

The judge, before whom the cession is pending, is vested with the discretion to determine what are such conservatory acts as are necessary to preserve the property or its value for the interest of all concerned.

It certainly requires a clear case of necessity to justify the sale of immovable property as a conservatory act.

But no one can read the statement of agreed facts without perceiving that it presents the strongest possible case. The syndics

themselves, who are the only appellants, unreservedly conceded the necessity of the sale in order to prevent serious deterioration in value, and that it would be " greatly to the interest of all concerned." What was the judge to do? Was he to sit idly and permit the plantation to go to waste and ruin, sacrificing the whole benefit of the planted crops? Or was he to embark the provisional syndics in the hazardous enterprise of borrowing large sums of money to run seven sugar plantations? If not, there was no other alternative but to order the sale to proceed, and, in so doing, we think he wisely exercised a legal discretion.

Judgment affirmed.